HOGDEN CROSSETT v. THE STATE.

No. 6346. Decided December 17, 1921.

1.—Abortion—Definition of Offense—Venue—Operation—Drug.

Where the term of the statute fixes the completed act of abortion, that is by the term "abortion" is meant that the life of a foetus or embryo shall be destroyed in the woman's womb, the theory of the State that the removal of

a child's body from the mother's womb is a part of the abortion even if the death of the child was brought about somehow somewhere else, and the operation being performed in the county of the prosecution, that the venue was in said county, is untenable under the evidence, which showed that if any abortion was effected it was by a drug administered in another county than that of the prosecution.

### 2.—Same—Venue—Abortion—Statutes Construed—Drug Administered.

There is no specific venue-statute applying to abortion, hence under Article 258, C. C. P., the proper county for the prosecution is the county where the offense is committed, following Moore v. State, 37 Texas Crim. Rep., 552; and where the evidence in the instant case showed that if any abortion was effected it was done by means of a drug taken by the alleged female upon solicitation of defendant, sent either by mail or express, from the county of the prosecution to another county in which the said female then lived at the time of taking said drug, held: that the venue was in said other county and not in the county of the prosecution; although the operation taking the dead foetus from the mother occurred in the county of the prosecution.

### 3.—Same—Venue—Legislation Suggested.

It is suggested that legislation as to venue in abortion cases may well be had.

Appeal from the District Court of Travis. Tried below before the Honorable James R. Hamilton.

Appeal from a conviction of abortion; penalty, two years in the penitentiary.

*McLean, Scott & McLean,* for appellant.—On question of venue: Fondren v. State, 169 S. W. Rep., 411, and cases cited in opinion.

*R. H. Hamilton,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Conviction is for abortion. Penalty two years in the penitentiary.

The record in this case is the history of a most unfortunate tragedy. Rosa Stuart and appellant lived near each other in Dawson County. They were sweethearts, and he was her constant companion. After his return from the army he remained at Lamesa until in January or February, 1919, when he came to Austin to attend the State University. About May 1st the young lady left home presumably going to Vernon. Her family knew nothing of her unfortunate condition. One postal card from her was received by her stepmother from Fort Worth. The next they knew of her, her dead body was shipped home from Austin for burial. After her death the following letters were found by her stepmother. Upon the trial it was admitted they were in appellant's handwriting.

> "Varsity
> April 12th Sat.

Dearest Little Girl:—

Yes poor honey I know you are really in an awful position but if those pills work, and it is possible that they will have by the time you

get this everything will be happy for you and the load lifted from my brain. If those pills haven't acted by the 21st I'll send you the money and you can start to Vernon. I'll meet you in Ft. Worth and bring you on down here to the man. He is an old Dr. and knows all the law, in and outs, about just such affairs as ours. I know you can explain delays on the road and give excuses to go to Vernon more easily than where B—come from. He says these pills will sure do it tho' so *you* must give them every chance in the world. *Don't vomit any of them up.* If you will go on and eat and act natural and not cry so much there'll be a heap better chance for you to get straightened out. If you'll try you can eat and drink those pills alright. Put the pill *away* back on your tongue as far as you can get it then try to swallow a dipper full of water at once.

Oh! about us marrying later on isn't worrying me *now*. Nothing is bothering me in the slightest but this one *awful* affair. It*s* makes up for all the trouble I ever could have.

Let us hope and a lot depends on you giving those pills the proper chance *so do your part.*

As always,
Hogden

Are you right sure you were disappointed in Carrie?"

"Sunday

Dearest I just now got up it is nearly twelve. I should have gone to Sunday School I suppose but didn't feel like it. I just rather take it easy. I guess I am lazy."

On May 5th, 1919, appellant and deceased registered at the Hancock hotel in Austin as husband and wife. On the 12th of May they checked out. Shortly before they left Dr. Litten went to their room, remaining probably thirty minutes. In a few minutes after he left appellant and deceased also left, and on the same day she was registered at the Seton Infirmary as a patient, having been accompanied there by appellant. About the 9th of May accused consulted Dr. W. B. Black, telling him his (appellant's) wife was in trouble, and wanting something done for her. Dr. Black advised that it seemed to be a surgical case and informed him that was out of his line, as he did no surgery work. Also he suggested that appellant might take his wife to a maternity home in San Antonio. About an hour after her arrival at the sanitarium on the 12th deceased was operated on by Dr. Litten. Dr. Kirk was present at the time, administering the anaesthetic. He had no knowledge of the character of the operation to be performed, having been requested by Dr. Litten to aid him. Dr Kirk immediately noticed there was something wrong with Dr. Litten, as he was working recklessly and in a way to endanger the patient's life, and he was repeatedly warned by Dr. Kirk and others present. It was agreed during the trial that deceased's womb was punctured by Dr. Litten during the operation, causing infection of the uterine cavity, resulting in death about four

·days later.  Appellant was not present at the operation, and however reprehensible he may have been in other particulars, he was not shown to be a party to the criminal carelessness of the. physician who caused the young lady's death.  The representatives of the State recognizing ·this fact abandoned all counts in the indictment save that charging abortion.  There is no question but that the foetus was dead when the ·operation was begun.  Dr. Kirk's testimony leaves no doubt upon this point.  It is not so clear how long it had been dead.  The jury could have found from the evidence that it was dead even before the young lady reached Travis County.  However, we do not regard that as highly material.  It is mentioned because in some cases the distinction does not seem to be drawn between the completed act of "abortion" which is the death of the foetus, and the expulsion or removal of the already dead foetus from the womb, which may occur days and even weeks after the death.  Our statute fixes the completed act in unmistakable terms:  "By the term 'abortion' is meant that the life of the foetus or embryo shall be destroyed in the woman's womb."

The sixth count in the indictment, and the only one submitted to the jury, charged that appellant, in Travis County, administered to Rosa Stuart a drug and medicine calculated to produce abortion, and did furnish to Rosa Stuart a drug and medicine to produce abortion, and did by the means used procure an abortion.  The manner in which this issue was submitted to the jury becomes important in our view of the case.  They were told substantially, if appellant in *Travis* County, *sent to Rosa Stuart a drug* or medicine calculated to produce an abortion with the intent that she should take it and an abortion be brought about, and that she *did take it* and thereby her unborn child was killed, he would be guilty.

After all evidence was in, motion was made by counsel for accused that the court direct the jury to return a verdict of not guilty on the ground that there was not sufficient evidence to show that appellant was guilty of any offense committed in Travis County.  Proper exception was reserved to the refusal of this motion.  In connection with the motion, and as a part of the bill of exceptions the arguments of attorneys and their views upon the law appear.  It seems to have been the theory of the State that the removal of the child's body from the mother's womb is a part of the abortion, and even if the death of the child was brought about somewhere else, a necessary part of the abortion was performed in Travis County.  It was perhaps upon this theory that the motion was not sustained.  The statute heretofore quoted defining abortion is antagonistic to the foregoing contention of the State. We have no specific venue statute applying to abortion, hence under Article 258 C. C. P. the proper county for the prosecution is in the county where the offense was committed.  The leading case is Moore v. State, 37 Texas Crim. Rep., 552, and as we understand the decision it fails to support the State's position, but does uphold appellant's contention.  In that case the defendant was charged with having com-

mitted an abortion in Jack County. The evidence showed that the drugs were furnished the woman in Jack County, where she used them, and that physical means to bring about the desired result also occurred there. However, the abortion occurred in Montague County. Defendant urged the same view that the State took in the instant case. We quote from that opinion: "And he (defendant) insists that the offense was not committed until the abortion took place; that this was the consummation of the offense; and that it occurred in Montague County; and that Jack County had no jurisdiction. . . . All the decisions of our own court on this question of venue agree that our statute is obligatory, and that the offense is punishable in the county where committed, except as provided by special statutes. The difficulty has been in applying the rule laid down in the statute. . . . There was no abortion in Jack County, for this occurred in Montague County, when appellant was not present, and what he did to procure the abortion occurred entirely in Jack County. While we are controlled in this matter by our statute, the common law may aid us in determining how this matter was regarded; that is, as to where the offense was regarded as committed, when all that was done by the defendant occurred in one county, and the consummation took place in another." After a long review of the text writers and decisions the court announced its conclusion as follows:

"Now, both upon reason and authority, it occurs to us that the offense charged in this case was committed in Jack County. The defendant procured the drugs and administered the same to the prosecutrix in Jack County. He procured the instruments and performed the operation on the prosecutrix in Jack County. All that he did to produce the abortion of the prosecutrix was done by him in said county. The final consummation of the offense occurred in Montague County, but the sole cause of this was set in motion by appellant in Jack County—that is, the appellant put in operation a force in one county which produced its results in another; and we hold that he is responsible in the forum where he performed the acts which resulted in the abortion."

In the instant case there is no evidence that appellant administered any drugs to deceased in Travis County. That issue was not even submitted. There is no evidence that he furnished her in Travis County any drugs to take. Recognizing that the State was relying upon the letter to the effect that appellant had sent her certain pills to be taken by her to bring about an abortion, the court submitted the issue in that way, telling the jury if appellant from Travis County sent the pills to her, and she took them, and an abortion was produced, he could be convicted regardless of where she was when the drugs were taken. We may assume that the pills were secured by appellant in Travis County. However earnestly he may have desired an abortion, if he had kept them in his possession there, no offense would have been committed. If he sent them from Travis County by express or mail to de-

ceased in Dawson County, it cannot be doubted that if deceased had never taken them, no offense would have been committed regardless of appellant's intent, and her desire in the matter. But when she took the pills, then, and not until then, the act was committed which set in motion the cause which produced the abortion. All the evidence tends to show that she took them in Dawson County, and if she did we believe that County and not Travis was the forum of the offense.

The text in "Cyc" Vol. 1, page 175, does not support the proposition. It is there said: "Where a resident in one State procures drugs and medicines therein and sends them through the mail to a pregnant woman living in another state, with advice to her to take the same for the purpose of causing a miscarriage, he may be prosecuted for the abortion in the state from which they were sent." The only case cited to support the text is State v. Morrow, 40 S. C., 221. But in Vol. 1, Standard Encyclopedia of Procedure, page 96, we find the same case cited in support of the direct converse of the proposition quoted, and the case itself demonstrates the correctness of the latter citation. The prosecution was in South Carolina. The defendant procured pills in the District of Columbia and sent them by mail to a pregnant woman in South Carolina, advising her to take them to produce an abortion, which she did. The court holding jurisdiction in the latter state said: "If the defendant procured the pills in Washington, and transmitted them by mail to the said Colie Fowler, with the advice for them to be taken for the purpose of bringing about an abortion, and she received and took them in this State, in contemplation, it was the same thing as if defendant in person had brought the pills to Columbia and there delivered them to Colie Fowler. . . . Instead of coming in person to Columbia to deliver the pills, he simply employed the agency of the mail to do the act which he desired to have done, and which was done by his express authority and direction, in this State."

While the case last cited is dealing with state and not county lines, yet the reasoning is pertinent to the question before us. At the time the letters in evidence were written appellant was in Travis County and deceased in Dawson County, and the pills were evidently delivered to her in the latter county through some agency selected by appellant, with advice to deceased to take them there, and report to him the result.

Under the evidence before us, and the authorities cited we are constrained to hold the venue to have been in Dawson County and not in Travis. The instant case suggests that some legislation in regard to venue in abortion cases might be well had.

The judgment of the trial court is reversed, and the cause remanded.

*Reversed and remanded.*